THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD PENOYER, Appellant.

Third Department, January 21, 1988

APPEARANCES OF COUNSEL

*Peter E. Smith* for appellant.

*Neal A. Rose, District Attorney,* for respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

Defendant was indicted for vehicular manslaughter, vehicular assault and two counts of operating a motor vehicle while under the influence of alcohol following a motor vehicle accident occurring on September 15, 1984 on State Route 80 in the Town of Cazenovia, Madison County. There was testimony that defendant had spent some five hours before the accident drinking beer at a local bar and that his blood alcohol content was .26%. While driving his International Scout vehicle eastbound on Route 80 with Scott Haitian as a passenger, defendant collided head-on with a Volkswagen automobile, proceeding westbound, driven by Robert Brandt, Jr. A passenger in the Brandt vehicle was killed and Brandt was seriously injured.

Brandt was incapable of testifying at defendant's trial because of head injuries. Haitian claimed that he was looking down just before the accident happened and could not testify to the position of the cars; when he looked up the cars collided. Other witnesses who came to the scene shortly after the accident indicated that the cars ended up totally in the westbound lane of Route 80. Defendant, in a statement made to police, said that when he reached the crest of a hill on Route 80 he saw the Volkswagen coming toward him in the middle of the road, straddling the center line. He pulled his wheel to the left to avoid hitting the car and as he did the collision occurred. Haitian testified that defendant did not swerve to the left to avoid the collision. The prosecution's accident reconstruction expert concluded that Brandt's vehicle was centered in the westbound lane of Route 80 and that at the time of the crash defendant's vehicle was traveling eastward in the westbound lane and heading back toward the eastbound lane.

Defendant was found guilty on all counts. Prior to sentencing, defendant moved to set aside the verdict pursuant to CPL 330.30 (3) due to newly discovered evidence. A two-day evidentiary hearing was held, before the same Judge who presided over defendant's trial, at which an alleged eyewitness to the event, Elon Davis, testified that after reading accounts in the

newspaper of the trial and the respective contentions of the People and defendant as to how the accident occurred, and that defendant was found guilty, he made himself known to defense counsel as a witness to the accident. Davis testified that the Volkswagen had passed his car going up the hill, that it remained improperly in the eastbound lane, that both the Scout and the Volkswagen veered toward the westbound lane at the hill's crest and collided in such fashion that he could see the roof and windshield of the Scout over the Volkswagen from his position down the hill. County Court denied the motion for a new trial. Defendant appeals; we affirm.

To warrant a new trial, the newly discovered evidence must be such as to probably, not merely possibly, change the result if a retrial is had, and also must not have been discoverable before trial by the exercise of due diligence *(see, People v Priori,* 164 NY 459, 472). After the two-day evidentiary hearing, County Court concluded that defendant's motion was deficient in both respects. In a comprehensive and carefully documented decision, the court unequivocally found the newly discovered evidence, Davis' testimony, to be unbelievable, hence unlikely to change the trial's result, and furthermore, that with due diligence Davis was readily discoverable.

County Court had the considerable benefit of observing Davis' demeanor and heard and saw the evidence underlying the jury's guilty verdict. This is no small advantage and it is precisely why the court's evaluation of the witness's credibility must be given great deference *(see, People v Scarincio,* 109 AD2d 928, 929). Here, County Court in its considered judgment concluded that Davis' account, in light of the other evidence, was highly improbable and that Davis himself was not credible. The improbability of Davis' rendition is borne out by inconsistencies between his testimony and the proof adduced at trial, which indicates that he was not in a position to view the events he described since he placed himself at 200 feet before the crest of the hill beyond which the accident occurred, a scene that the Judge and jury visited during the course of the trial because of the importance of the topography. Additionally, Davis characterized himself as a tall man, looking under a sun visor, into what he and others described as blinding sunlight. Also on the issue of veracity, County Court noted that Davis was not truthful in his supporting affidavit and that his response to witnessing a head-on collision was to not come forward with his observations until nine months later, after a result he did not fancy was reached by

the jury; given that Davis followed with keen attention events occurring in this small community, this was strangely incongruous behavior.

The record evidence is that Davis, an avid newspaper reader and television viewer, is a man with a good deal of time on his hands, much of which he spends visiting with people at area coffee shops and taverns. Character witnesses referred to him as a talker, storyteller, one who exaggerates and embellishes, and who enjoys being the center of attention. Davis' conduct during the hearing was petulant and incivil, further undermining his credibility. In light of the highly questionable value of Davis' testimony, it cannot be said that County Court abused its discretion in denying defendant's motion.

Alternatively, a new trial was properly denied because defendant failed to prove that Davis could not have been discovered by the exercise of due diligence (see, CPL 330.30 [3]). The hearing disclosed that several people in the community where the accident occurred, and where defendant and Davis resided, knew that Davis was at the scene of the accident or claimed to have witnessed the occurrence. Yet defendant introduced no proof of any investigation for potential witnesses, leading County Court to observe "[h]ere, even the most cursory investigation would have discovered Davis".

MIKOLL, J. (dissenting). I respectfully dissent.

"Evaluation of a witness's credibility is an area wherein the trier of fact is to be accorded great deference" (People v Scarincio, 109 AD2d 928, 929). However, where, as here, no eyewitness to the accident could specifically pinpoint who precipitated the collision and the reconstruction experts remained sharply divided on the question of causation, the probabilities were considerable that the witness, if believed by the jury, would change the result of the trial as to the two most serious felonies, manslaughter and vehicular assault. There is no question that Davis' testimony was highly material to the issues involved in the manslaughter and vehicular assault counts. Davis' testimony would provide the sole source of recollection by an eyewitness. Also, its special value reposed in the fact that Davis was not related to either defendant or Brandt. His testimony most assuredly was not cumulative.

Under such unique circumstances, County Court should not lightly have dismissed the testimony offered out of hand as unworthy of belief. The record indicates that Davis was unpleasant, offensive, cantankerous and sometimes disjointed

but, in the essentials of the incident, he clearly articulated his recollection—that the Volkswagen passed him, that it failed to return to its proper lane and, just at impact, it and the Scout veered to the westbound lane where the crash occurred. In indicating its disbelief, County Court referred to Davis' testimony as varying from the trial evidence. We note that Davis was at variance from the testimony of the reconstruction expert for the People, who was himself contradicted by the defense expert and by defendant's statement given immediately after the accident.

The issue of how the accident occurred was not clear-cut. There were no skid marks on the highway to irrefutably pinpoint the vehicles' positions at relevant distances before the collision. The physical evidence, such as it was, was subject to varying interpretations. The best that could be said of the experts' testimony was that they offered reasonable probabilities rather than solid opinions of what had occurred. The record indicates that this accident occurred slightly over the crest of the hill, but decidedly on the side in Davis' immediate view. The majority's statement to the effect that the accident occurred over the hill beyond Davis' view is not supported by the record.

Finally, it was established in the record that Davis' identity came to the fore only after trial and that he did not make himself known to the sources which would be the natural repositories of witness information. Also, no one saw him on Route 80 on the day of the accident so that his identity was not discoverable by the exercise of reasonable diligence.

The judgment should therefore be reversed and the matter remitted to County Court for a new trial.

LEVINE and HARVEY, JJ., concur with YESAWICH, JR., J.; MIKOLL, J., dissents and votes to reverse in a separate opinion; MAIN, J. P., not taking part.

Judgment affirmed.