■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LANCE TUCKER, Appellant. [834 NYS2d 590]—

Mugglin, J. Appeal, by permission, from an order of the County Court of Albany County (Herrick, J.), entered October 24, 2005, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of murder in the second degree, after a hearing.

On direct appeal, this Court affirmed defendant's 1983 second degree murder conviction for killing a 71-year-old nun in the City of Albany (115 AD2d 175, 176 [1985]). Claiming both that two principal prosecution witnesses have recanted their trial testimony and also the existence of *Brady*, *Rosario* and *Giglio* violations, defendant moved pursuant to CPL 440.10 to vacate his judgment of conviction. After an evidentiary hearing, the motion was denied. Defendant appeals and we affirm.

Defendant first argues that the statements his private investigator obtained in 2002 from the two recanting witnesses constitute newly discovered evidence. To be sufficient to vacate a conviction, newly discovered evidence: "must fulfill all the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could have not been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and, (6) it must not be merely impeaching or contradicting the former evidence" (*People v Richards*, 266 AD2d 714, 715 [1999], *lv denied* 94 NY2d 924 [2000] [internal quotation marks and citations omitted]; *see People v Mack*, 301 AD2d 863, 864-865 [2003], *lv denied* 100 NY2d 540 [2003]; *People v Hayes*, 295 AD2d 751, 752 [2002], *lv denied* 98 NY2d 730 [2002]). Moreover, "a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence" (CPL 440.10 [1] [g]), and the defendant has the burden of proving each of these requirements by a preponderance of the evidence (*see* CPL 440.30 [6]).

With respect to whether recantation testimony will constitute newly discovered evidence, we note that "a presumption of regularity attaches to judicial proceedings and the burden is upon [the] defendant to overcome such presumption by substantial evidence" (*People v Williams*, 11 AD3d 810, 812 [2004], *lv denied* 4 NY3d 769 [2005]; *see People v Barber*, 280 AD2d 691, 693 [2001], *lv denied* 96 NY2d 825 [2001]). Moreover, recantation testimony has been deemed an extremely unreliable form of evidence (*see People v Cintron*, 306 AD2d 151, 152 [2003], *lv denied* 100 NY2d 641 [2003]; *People v Rodriguez*, 88 AD2d 890, 890-891 [1982]). Consequently, "[c]onsideration of recantation evidence involves the following factors: (1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts

established at trial as reconfirmed in the recantation; and (6) the relationship between the witness and [the] defendant as related to the motive to lie" (*People v Wong*, 11 AD3d 724, 725-726 [2004] [citation omitted]; *see People v Simmons*, 20 AD3d 813, 815 [2005], *lv denied* 6 NY3d 758 [2005]).

We conclude that County Court correctly applied the applicable portions of these rules in finding neither witness's recantation to be either credible or newly discovered evidence. Notably, on this appeal, defendant has confined his arguments solely to one of these witnesses, Curtis Williams, who claimed at the CPL article 440 hearing that his trial testimony denying the existence of a cooperation agreement with the prosecution was false. Although this record contains some evidence suggesting that a promise of no jail time was made for a then-pending burglary charge if he testified against defendant, Williams was sentenced to one year in jail well in advance of defendant's trial and made no mention of this guaranty during his testimony. Interestingly, at the CPL article 440 hearing, Williams reconfirmed his trial testimony that defendant had admitted to committing a burglary, but not to murdering the victim. Even were we to assume the truthfulness of his testimony in this proceeding, we would still agree that it does not constitute newly discovered evidence. Given the clear evidence of defendant's guilt provided by, among other things, the testimony of his girlfriend, there is no reasonable possibility that this evidence would change the result if a new trial were granted. Moreover, as Williams' recantation testimony had mere impeachment value, it does not constitute newly discovered evidence (*see People v Salemi*, 309 NY 208, 219 [1955], *cert denied* 350 US 950 [1956]).

Next, defendant argues that his conviction should be vacated as recently discovered documents reveal that various *Rosario*, *Brady* and *Giglio* violations occurred at his trial. "To establish a *Rosario* violation, it is incumbent upon a defendant to show that the claimed *Rosario* material was available and was not turned over to the defense" (*People v Gillis*, 220 AD3d 802, 805 [1995], *lv denied* 87 NY2d 921 [1996]), and that the material relates to the witness's direct examination (*see People v Perez*, 14 AD3d 625, 626 [2005], *lv denied* 5 NY3d 793 [2005]). Also, to warrant vacating a defendant's conviction, there must be a "reasonable possibility" that the nondisclosure of the *Rosario* material "contributed to the verdict" (*People v Jackson*, 78 NY2d 638, 649 [1991]; *see* CPL 240.75).

A *Brady* violation occurs if the prosecutor suppresses evidence favorable to the accused, including evidence of cooperation agreements between a prosecutor and a prosecution wit-

ness promising leniency on pending charges in exchange for favorable testimony at the defendant's trial (*see People v Steadman*, 82 NY2d 1, 6 [1993]; *People v Craig*, 293 AD2d 351, 352 [2002], *lv denied* 98 NY2d 674 [2002]). However, to constitute *Brady* material, the evidence must be *exculpatory* and must be in the People's control (*see People v McMullen*, 92 AD2d 1059, 1060 [1983]). Moreover, when a defendant simply makes a general request for exculpatory evidence, the prosecutor's failure to disclose the *Brady* material will not warrant reversal unless "there is a reasonable probability that the result of the trial would [otherwise] have been different" (*People v Lent*, 204 AD2d 855, 856 [1994], *lv denied* 84 NY2d 869 [1994]; *see People v Dishaw*, 30 AD3d 689, 691 [2006], *lv denied* 7 NY3d 787 [2006]). Finally, evidence will not be considered *Brady* material if the defendant had knowledge of it during the trial (*see People v LaRocca*, 172 AD2d 628, 629 [1991], *lvs denied* 78 NY2d 923, 968 [1991]).

In addition, to avoid a *Giglio* violation, a prosecutor must correct the false testimony of a prosecution witness when it relates to a significant issue in the case (*see Giglio v United States*, 405 US 150, 153-154 [1972]). However, such testimony must be "highly material to the defense" for a correction to be required (*People v Martin*, 240 AD2d 5, 9 [1998], *lv denied* 92 NY2d 856 [1998] [internal quotation marks and citation omitted]).

Defendant makes three arguments. First, that the prosecution should have disclosed a letter sent by Williams to Supreme Court Justice Edward Conway, received by the District Attorney on January 4, 1983, in which Williams repeats his claim that, despite promised leniency, he was sentenced to a year in jail. Second, defendant argues that Williams' polygraph test results should have been disclosed to him. Third, defendant claims that a list of all crimes Williams claims to have committed with defendant, given to the police by Williams, should have been turned over. After careful review of the record, we conclude that defendant failed to establish by a preponderance of the evidence (*see* CPL 440.30 [6]) that nondisclosure of any of the claimed evidence constitutes a violation of his due process rights. No document relates to the direct examination of Williams and no reasonable possibility exists that the failure to disclose this material contributed to the guilty verdict. Further, none of the existing evidence is exculpatory. As to the alleged cooperation agreement, the record demonstrates both that Williams did not receive the benefit of the cooperation agreement in exchange for his testimony and his trial attorney had been informed by the prosecution of the possible existence of cooperation agreements.

Turning to the results of the polygraph examinations of Williams, the police testimony at the evidentiary hearing established that written results of such examinations were not always recorded and none was recorded in this case. Thus, defendant failed to establish by a preponderance of the evidence that such records existed at or before the trial. With respect to the statement made by Williams listing all of the crimes committed in conjunction with defendant, while arguably useful to impeach Williams' trial testimony, it does not relate to his direct testimony nor does it demonstrate any reasonable possibility that such information would have impacted the jury's verdict. On the contrary, given the litany of crimes in which defendant was allegedly involved, the usefulness of such a statement for impeachment purposes is far outweighed by its potential for prejudice to defendant.

As a final matter, the issues that defendant seeks to raise concerning alleged prosecutorial misconduct should have been or were raised in connection with defendant's direct appeal from the judgment of conviction, and are not properly raised on the present motion to vacate his judgment of conviction (*see* CPL 440.10 [2] [c]).

Peters, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed.