(January 20, 2011)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VAUGHN AVERY, Appellant. [915 NYS2d 356]—

Garry, J. Appeals (1) from a judgment of the Supreme Court (Sheridan, J.), rendered July 30, 1997 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree and attempted robbery in the first degree (two counts), and (2) by permission, from an order of the County Court of Albany County (Herrick, J.), entered December 7, 2009, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

On an evening in 1996, defendant, Jason Clark and Antonio Spears gathered near a grocery store in the City of Albany. They encountered an acquaintance of Spears who answered some

questions about the store after exiting. After the acquaintance left the area, defendant and Clark, armed with handguns, entered the store. The store owner was stocking shelves and the victim was working at the front counter. The owner testified that he heard two shots, looked up, and saw two men with covered faces standing near the store entrance, one of whom was holding a gun. He threw jars at the men and they fled. A resident of an upstairs apartment heard the shots, ran downstairs and saw two men fleeing on foot. The victim had been fatally shot by Clark. The next morning police went to the home of Clark and defendant and placed both men in custody. Clark directed police to two handguns concealed in his bedroom.

Defendant was charged with murder in the second degree (felony murder), attempted robbery in the first degree (two counts) and criminal possession of stolen property in the fourth degree. After a jury trial, defendant was convicted of the first three counts and acquitted of the criminal possession charge.[1] He was sentenced to an aggregate prison term of 25 years to life. Defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction. The motion was denied after a hearing. Defendant now appeals from the judgment of conviction and, by permission, from the order denying his motion.

Initially, defendant's challenge to the legal sufficiency of the evidence supporting his convictions is unpreserved. His motion to dismiss at the close of the People's case identified no specific deficiencies in the proof as to the counts on which he was convicted (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Nesbitt, 69 AD3d 1109, 1110-1111 [2010], lv denied 14 NY3d 843 [2010]), and he failed to renew the motion after presenting his own evidence (see People v Lane, 7 NY3d 888, 889 [2006]; People v Garrow, 75 AD3d 849, 850 [2010]). As defendant acknowledges, his claim that Supreme Court improperly instructed the jury on accessorial liability is also unpreserved (see People v Moyer, 75 AD3d 1004, 1005 [2010]). The charge, read as a whole, permitted the jury to gather the correct rules to be applied (see People v Dickson, 58 AD3d 1016, 1018 [2009], lv denied 12 NY3d 852 [2009]). We find no basis to exercise our interest of justice jurisdiction (see People v Arce, 70 AD3d 1196, 1198 [2010]; People v Asai, 66 AD3d 1138, 1140 [2009]).

---

1. Before defendant's trial, Clark pleaded guilty to, among other charges arising from the grocery store incident, two counts of murder in the second degree and to several charges arising from a prior incident in which he and Spears stole the guns used at the store. Spears was tried separately, acquitted of involvement in the grocery store crimes, and convicted on counts related to the stolen guns.

Defendant next raises several arguments related to the trial testimony given by the upstairs apartment resident, whose first language is not English. He contends that he was deprived of his constitutional right to confront witnesses against him when the People offered the testimony of this witness without an interpreter. To the extent that this argument pertains to defendant's direct appeal, it is unpreserved, as defendant did not object to the lack of an interpreter at trial. In any event, we would have found no constitutional violation; while the witness had an imperfect grasp of the language, her answers to defense counsel's questions were responsive (*see People v Bell*, 5 AD3d 804, 806-807 [2004], *lv denied* 3 NY3d 636 [2004]).

Defendant next asserts that the People violated *Brady v Maryland* (373 US 83 [1963]) by failing to disclose potential impeachment evidence to the defense, in that this witness allegedly asked the People to provide an interpreter.[2] As pertinent here, a *Brady* violation occurs when prejudice arises from suppression by the People of material evidence that could be used to impeach "a crucial prosecution witness" (*People v Phillips*, 55 AD3d 1145, 1149 [2008], *lv denied* 11 NY3d 899 [2008]; *see People v Fuentes*, 12 NY3d 259, 263 [2009]). Assuming, arguendo, that the witness made such a request and that this could have been used to impeach her, disclosure would have done nothing more than to demonstrate her limited ability to communicate in English, which was already self-evident. Accordingly, we find no "reasonable probability" that disclosure would have led to a different result at trial (*People v Fuentes*, 12 NY3d at 263).

Defendant further argues that a pretrial statement made by this witness to police—and provided to him for the first time at the CPL 440.10 hearing—should have been disclosed before trial and, because it is written in relatively fluent English, would have permitted him to demonstrate that the police had "manufactured" the statement, thereby impeaching the witness at trial. We find no *Brady* violation. The statement is somewhat more detailed than the trial testimony, but it corresponds accurately to the essentials of that testimony and contradicts none of it. Accordingly, it has little or no impeachment value, and we find no reasonable probability that its disclosure would have affected the result of the trial (*see id.*). Although the state-

___

**2.** This claim is based on the hearsay affidavit of a private investigator who stated that, during a 2004 interview, the witness told him that she had made such a request. Notably, no such request is mentioned in a statement obtained by the investigator from the witness during that interview, and neither the investigator nor the witness testified to the request during the CPL 440.10 hearing.

ment was *Rosario* material and should have been disclosed, there is no "reasonable possibility that the non-disclosure materially contributed to the result of the trial" (CPL 240.75; *see* CPL 240.45 [1] [a]) and, thus, no prejudice exists requiring reversal (*see People v Felix-Torres*, 281 AD2d 649, 650-651 [2001], *lv dismissed* 97 NY2d 681 [2001]).

Upon his CPL 440.10 motion, defendant argued that his conviction should be vacated because of newly-discovered evidence in the form of alleged recantations by Clark and the upstairs apartment resident, and because of ineffective assistance of counsel at trial. On the morning after the crime, Clark gave a statement to police indicating that defendant participated in planning the robbery and was with Clark inside the store when Clark shot the victim; he later testified to this effect in greater detail during his plea allocution. At the CPL 440.10 hearing, he contradicted this testimony, claiming that police fabricated his statement and that he testified falsely about defendant's involvement because his lawyer told him that his plea would not be accepted if his testimony was inconsistent with the statement. "There is no form of proof so unreliable as recanting testimony" (*People v Shilitano*, 218 NY 161, 170 [1916]). It was defendant's burden to overcome the presumption of regularity attached to the prior judicial proceedings with substantial evidence establishing that Clark's previous statements were false (*see People v Tucker*, 40 AD3d 1213, 1214 [2007], *lv denied* 9 NY3d 882 [2007]). Factors to be considered in determining the credibility of recantation testimony include its inherent believability, the demeanor of the recanting witness, the existence of corroborating evidence, reasons offered for the recantation and the previous testimony, the relationship between the recanting witness and the defendant, and "the importance of facts established at trial as reaffirmed in the recantation" (*People v Wong*, 11 AD3d 724, 726 [2004]). The recantation was not inherently believable, as it contradicted not only Clark's prior statements and testimony, but those of defendant, who told police that he entered the store with Clark after they made plans to rob it, and of Spears. Further, Clark's purported reason for giving false testimony—the hope of leniency—was inconsistent with the fact that he pleaded guilty with no promised disposition and with the sentence he later received of 25 years to life. Finally, County Court could reasonably have concluded that the real motivation for Clark's changed testimony was the guilt and remorse that he concededly felt because his actions in shooting the victim led to defendant's conviction for felony murder. Thus, we find that County Court properly applied the pertinent factors in determining that Clark's recantation testimony was not credible.

We further agree with County Court that the testimony of the upstairs apartment resident, given at the CPL 440.10 hearing with the assistance of an interpreter, did not constitute a recantation. Although the resident's CPL 440.10 testimony was more detailed than the testimony she gave at trial, there was no inconsistency in the salient details—she heard gunshots, she came downstairs, and she saw two men running away, one of whom wore a red jacket.[3] Moreover, even if the additional details included in her CPL 440.10 testimony had been revealed at trial, suggesting that it may have taken her 30 to 40 seconds to reach the bottom of the stairs, this impeachment evidence is insufficient to set aside the judgment of conviction (*see People v Richards*, 266 AD2d 714, 715 [1999], *lv denied* 94 NY2d 924 [2000]; *People v Sides*, 242 AD2d 750, 751 [1997], *lv denied* 91 NY2d 836 [1997]).

Defendant further argues that he was denied effective assistance because his trial counsel allegedly did not conduct pretrial interviews with the upstairs apartment resident, Clark and Spears. Initially, defendant contends that, if his trial counsel had interviewed the upstairs apartment resident, he would have determined that she could not have gotten downstairs in time to see defendant running away. However, defendant's trial counsel cross-examined the resident in some detail as to her actions before coming downstairs and the extent of her opportunity to see the fleeing men. Further, defendant himself testified that he ran away from the scene with Spears, although he denied wearing a red jacket. Thus, nothing in the resident's CPL 440.10 testimony—which was, as already discussed, essentially consistent with her trial testimony—indicates that a pretrial interview would have provided trial counsel with information that would have undermined her trial testimony to an extent demonstrating ineffective assistance.

Defendant next contends that Spears, if interviewed, would have furnished defendant with an alibi by stating that defendant was outside the store and walking away from it when Clark shot the victim. Spears made this claim in a 2008 affidavit supporting defendant's CPL 440.10 motion; however, it contradicts his own prior statement as well as all of the other information available to defense counsel at the time of trial. A few hours after the crime, Spears told police that after watching defendant and Clark enter the store, he walked away and then heard gunshots. On the morning after the crime, defendant told police that he was inside the store when the shots were fired; at trial,

---

**3.** At trial, the acquaintance who encountered the three men outside the store just before the robbery testified that defendant was wearing a red jacket.

he testified that he was at the store entrance. Thus, "as of the time of the representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]), trial counsel had no reason to believe that Spears would state that defendant was outside the store or otherwise furnish an alibi.

Defendant further contends that Spears would have provided defense counsel with information enabling him to impeach the acquaintance they had encountered before the robbery who, according to defendant, gave false testimony as part of a vengeful effort to wrongfully implicate Spears.[4] At defendant's trial, the acquaintance testified that Spears asked him several questions about cameras and other people inside the store, that he believed that Spears, defendant and Clark intended to do something wrongful in the store such as "shoplift, or something of that nature," and that defendant was wearing a red jacket. Given the consistency between this testimony and the acquaintance's prior statements—as well as Clark's and defendant's—any allegation that Spears could have impeached him or revealed the plot in which he was allegedly engaged is too speculative to serve as a basis for a finding of ineffective assistance of counsel.

Defendant's final claim of ineffective assistance of counsel—that further investigation would have revealed that Clark was lying about defendant's involvement—necessarily fails as a result of County Court's well-founded conclusion that Clark's recantation was not credible. The constitutional requirement for effective assistance is met " '[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation' " (*People v Benevento*, 91 NY2d 708, 712 [1998], quoting *People v Baldi*, 54 NY2d at 147). As County Court noted, the record reveals that defendant's trial counsel made appropriate pretrial motions, participated actively in hearings, and carried out vigorous cross-examination of the People's witnesses, among other things; accordingly, we agree with the court's determination that defendant received meaningful representation (*see People v Battease*, 74 AD3d 1571, 1575-1576 [2010], *lv denied* 15 NY3d 849 [2010]).

Defendant's remaining arguments in support of his CPL 440.10 motion depend on accepting, among other things, his claim that police fabricated the statements made at the time of the crime by Clark, Spears and defendant himself, and that none of the men discovered the purported fabrications by read-

---

4. Notably, when defendant was tried, Spears had already been acquitted of involvement in the grocery store crimes.

ing the statements before they signed them. County Court was not required to find this claim—based in part on Clark's discredited recantation and in part on evidence dehors the record—credible. Thus, we find that the court properly exercised its discretion in denying the motion to vacate the judgment of conviction (*see generally People v Simmons*, 20 AD3d 813 [2005], *lv denied* 6 NY3d 758 [2005]).

Cardona, P.J., Mercure, Malone Jr. and Stein, JJ., concur. Ordered that the judgment and order are affirmed.