People v Nelson (2019 NY Slip Op 02587)





People v Nelson


2019 NY Slip Op 02587


Decided on April 4, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 4, 2019

109311

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JAMES T. NELSON, Appellant.

Calendar Date: February 15, 2019

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Aarons, JJ.


Robert DiDio & Associates, Kew Gardens (Robert DiDio of counsel), for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal, by permission, from an order of the Supreme Court (McDonough, J.), entered April 13, 2017 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crimes of assault in the first degree, assault in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree, after a hearing.
In 2001, defendant was charged with assault in the first degree, assault in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree for allegedly cutting the arm of the victim — Howard Smith — with a razor blade during an inmate altercation in the library at the Albany County Correctional Facility and for thereafter being found with a razor blade in his rectum. Following a jury trial, which included testimony from both Smith and defendant, defendant was found guilty as charged. He was thereafter sentenced to a prison term of 20 years for the crime of assault in the first degree, followed by five years of postrelease supervision, and to lesser concurrent terms on the remaining convictions. Upon defendant's direct appeal, in which he raised a claim of ineffective assistance of counsel, this Court affirmed the judgment of conviction (1 AD3d 796, 798 [2003], lv denied 1 NY3d 631 [2004]).
Nearly 15 years after his conviction, defendant moved, pursuant to CPL 440.10 (1) (g) and (h), for an order vacating the judgment of conviction on the grounds of ineffective assistance of counsel, actual innocence and newly discovered evidence. Supreme Court denied that aspect of defendant's motion seeking to vacate his conviction on the basis of ineffective assistance of counsel without conducting a hearing. As for defendant's claim of actual innocence and the alleged newly discovered evidence, Supreme Court determined that an evidentiary hearing was necessary, but, after that hearing, concluded that it was improbable that the newly discovered evidence would produce a more favorable verdict for defendant at a new trial. By permission of this Court, defendant now appeals.
Defendant first challenges Supreme Court's denial of his motion to vacate his judgment of conviction based upon actual innocence and newly discovered evidence. To warrant a new trial based upon newly discovered evidence, the defendant bears the burden of establishing, by a preponderance of the evidence (see CPL 440.30 [6]), that, among other things, the newly discovered evidence is of such a character that it would probably, not merely possibly, change the result upon retrial (see CPL 440.10 [g]; People v Backus, 129 AD3d 1621, 1623 [2015], lv denied 27 NY3d 991 [2016]; People v Penoyer, 135 AD2d 42, 44 [1988], affd 72 NY2d 936 [1988]). The newly discovered evidence offered by defendant here included Smith's recantation of his trial testimony identifying defendant as his assailant, as well as the confession of Keshon Everett, an inmate who, although allegedly present during the altercation, did not testify at trial and who came forward many years later to claim that he was actually the person who cut Smith's arm.
With respect to recantation evidence, the defendant bears the burden of rebutting the presumption of regularity that attached to the prior judicial proceeding by producing substantial evidence that the recanting witness's prior testimony was false (see People v Avery, 80 AD3d 982, 985 [2011], lv denied 17 NY3d 791 [2011]; People v Tucker, 40 AD3d 1213, 1214 [2007], lv denied 9 NY3d 882 [2007]). Recantation testimony has long been considered "an extremely unreliable form of evidence" (People v Tucker, 40 AD3d at 1214; see e.g. People v Shilitano, 218 NY 161, 170 [1916]; People v Lane, 100 AD3d 1540, 1541 [2012], lv denied 20 NY3d 1063 [2013]). Thus, in assessing the credibility of recantation testimony, courts consider a variety of factors, including "(1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts established at trial as reaffirmed in the recantation; and (6) the relationship between the witness and defendant as related to a motive to lie" (People v Wong, 11 AD3d 724, 725-726 [2004]; see People v Shilitano, 218 NY at 170-172; People v Simmons, 20 AD3d 813, 815 [2005], lv denied 6 NY3d 758 [2005]). "The credibility determination[s] of the hearing court, with its particular advantages of having seen and heard the witnesses, [are] entitled to great deference on appeal and will not be disturbed unless clearly erroneous" (People v Britton, 49 AD3d 893, 894 [2008] [citations omitted], lv denied 10 NY3d 956 [2008]; accord People v Davidson, 150 AD3d 1142, 1143-1144 [2017], lv denied 30 NY3d 1018 [2017]).
Our review and comparison of testimony received at the 2001 trial and the 2016 hearing, as well as affidavits written by Smith and Everett prior to the hearing, confirm Supreme Court's conclusion that Smith's recantation and Everett's confession were riddled with inconsistencies that undermined the overall reliability of their accounts. Initially, since his attack, Smith has offered several different sworn versions of events. At the hearing, some 15 years after the attack, Smith stated for the first time that Everett [FN1] was his assailant and that he had seen Everett remove a razor blade from the pages of a book. Such testimony stood in stark contrast to Smith's earlier trial testimony, during which he unequivocally identified defendant as the person who cut him and testified that defendant had removed the razor blade from his mouth prior to the assault. Smith's hearing testimony also differed from statements that he had made in his 2013 and 2015 affidavits.
Additionally, with the exception of Everett's identity as the assailant, the testimony given by Smith and Everett at the hearing differed in nearly all other material respects. For example, in conflict with Smith's testimony that Everett had retrieved the razor blade from a book, Everett testified that he took the blade out of his mouth. Significantly, both Everett's and [*2]Smith's hearing testimony was contradicted by defendant's trial testimony that Smith had actually been the one to wield a razor blade and that Smith had cut himself (see People v Avery, 80 AD3d at 985). Further, aside from a library sign-in sheet [FN2] allegedly indicating Everett's presence in the library during the altercation, not one trial witness named Everett as being present and involved in the fight. Moreover, Everett's testimony that he stashed the razor blade in a book after cutting Smith was called into doubt by trial evidence establishing that the library, including every book, had been searched by 30 correction officers in the wake of the attack and that a razor blade had not been found.
The hearing evidence also provided a basis for concluding that Everett and Smith each had a motive to lie and an opportunity to coordinate their false accounts. The evidence established that Everett is currently serving a sentence of life in prison, without the possibility of parole, for murdering a police officer. Everett testified to having a 20-year friendship with defendant, and Smith testified that, at the time of the attack, he knew defendant and Everett to be members of the Bloods gang. As Supreme Court observed, Everett's life sentence and long friendship with defendant, which included being codefendants in a federal cocaine distribution prosecution, presented a situation in which Everett had "nothing to lose" for falsely confessing to the crime to help his friend (People v Feliciano, 240 AD2d 256, 257 [1997], lv denied 90 NY2d 1011 [1997]).
Further, with respect to Smith's potential motive to lie, Smith acknowledged at the hearing that Everett sent him a sworn confession to the crime, dated February 26, 2013. Two months later, Smith signed his first affidavit stating that defendant had not been his attacker. Smith offered differing explanations in his hearing testimony and in his affidavits as to why he lied in his 2001 testimony. Given the curious timing of Smith's and Everett's respective affidavits and Smith's inability to cogently explain why he lied, it would not be unreasonable to conclude that some reason other than an altruistic change of heart led to Smith's recantation of his trial testimony. As Supreme Court further recognized, neither Everett nor Smith offered persuasive explanations for their extensive delays in coming forward with evidence that could exonerate defendant. Finally, the evidence established that there was a brief period of time in 2012 when Everett and defendant were incarcerated in the same state correctional facility. In light of all of the foregoing circumstances and considering that Supreme Court had the opportunity to hear and observe the testimony of Smith and Everett at the hearing (see People v Penoyer, 135 AD2d at 44), we find no basis upon which to disturb Supreme Court's determination that Smith's recantation and Everett's confession were not credible and, thus, "highly unlikely" to result in a more favorable verdict for defendant if he were granted a retrial (see People v Simmons, 20 AD3d at 815; People v Greene, 150 AD2d 604, 605 [1989], lv denied 74 NY2d 847 [1989]; compare People v Wong, 11 AD3d at 726-727).
Defendant also argues that Supreme Court erred in summarily denying that aspect of his CPL 440.10 motion based on ineffective assistance of counsel. Defendant faults his trial counsel for stipulating that the victim sustained a serious physical injury, an element of assault in the first degree (see Penal Law § 120.10 [1]), and for failing to preserve various issues and adequately cross-examine a particular witness. These alleged errors, however, were apparent from the record and, thus, could have been raised as part of the ineffective assistance of counsel claim that defendant already made on his direct appeal (see CPL 440.10 [2] [c]; People v Leader, 116 AD3d 1239, 1239-1240 [2014], lvs denied 24 NY3d 1045, 1046 [2014]; People v Jones, 101 AD3d 1482, 1483 [2012], lv denied 21 NY3d 1017 [2013]). Defendant further criticizes his trial counsel for failing to secure Everett as a trial witness. To the extent that this claimed error can be characterized as involving matters appearing both on the record and outside the record, defendant did not offer sworn allegations of fact concerning counsel's alleged deficiencies that would justify a hearing on the issue (see CPL 440.30 [4] [d]; People v Leader, 116 AD3d at [*3]1240; People v Jones, 101 AD3d at 1483). Accordingly, Supreme Court properly denied that aspect of defendant's motion based upon ineffective assistance of counsel without first conducting a hearing.
Egan Jr., J.P., Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the order is affirmed.



Footnotes

Footnote 1: Significantly, Smith testified throughout the hearing that an individual named "Jayblack" was his assailant. It was not until pressed by the prosecution on cross-examination that Smith hesitantly acknowledged that "Jayblack" was his own nickname for Everett, who was otherwise known as "Keeblack."

Footnote 2: The sign-in sheet, which was admitted into evidence at the hearing, includes Everett's name at the bottom of the list, but there is no time associated with his entry into the library, unlike every other inmate's name.