People v Scott (2023 NY Slip Op 04618)

People v Scott

2023 NY Slip Op 04618

Decided on September 14, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 14, 2023

112574
[*1]The People of the State of New York, Respondent,
v
Jaquan Scott, Appellant.

Calendar Date:August 17, 2023

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Jane M. Bloom, Monticello, for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.

Clark, J.
Appeal from a judgment of the Supreme Court (Roger D. McDonough, J.), rendered December 19, 2019 in Albany County, upon a verdict convicting defendant of the crimes of robbery in the first degree and robbery in the second degree (two counts).
At approximately 2:30 a.m. on July 31, 2018, two assailants hid in the shadows outside a convenience store in the City of Albany while the proprietor (hereinafter the first victim) closed up the business. As the first victim exited and locked the store, the two assailants grabbed him and, at knife point, directed him to let them into the store. Once inside, they stole several hundred dollars, including the money located inside the cash register. Then, the evening of August 3, 2018, Albany Police Department officers responded to an apartment building in Albany following a report that a woman (hereinafter the second victim) had been robbed by two assailants. Defendant and the codefendant, John Thaxton, were arrested and indicted in connection with the two incidents, but their cases were severed and tried separately.[FN1] As relevant here, defendant was charged with one count of robbery in the first degree and one count of robbery in the second degree in connection with the robbery of the first victim, and with one count of robbery in the second degree in connection with the robbery of the second victim. Following a jury trial, defendant was convicted as charged. Supreme Court then sentenced defendant to an aggregate term of 20 years in prison, followed by a period of postrelease supervision. Defendant appeals.
Defendant contends that the verdict is based on evidence that is legally insufficient and that the verdict is against the weight of the evidence because the People did not establish his identity as one of the assailants. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Harris, 203 AD3d 1320, 1321 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1033 [2022]; see People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022]). When "conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d 1016, 1017-1018 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Martinez, 166 AD3d 1292, 1293 [3d Dept 2018], lv denied 32 NY3d 1207 [2019]).
As relevant here, "[a] person is guilty of robbery in the first degree [*2]when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he[, she] or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 160.15 [3]). Similarly, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [h]e [or she] is aided by another person actually present" (Penal Law § 160.10 [1]). "Finally, as an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed [each] crime" (People v Taylor, 196 AD3d 851, 853 [3d Dept 2021] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 37 NY3d 1030 [2021]; see People v Jones, 215 AD3d 1123, 1125 [3d Dept 2023], lv denied 40 NY3d 935 [2023]).
As to the convenience store robbery, the first victim testified that in the early morning hours of July 31, 2018, he exited the store and saw two men standing near the entrance. After locking the door, he struggled with the assailants as they grabbed him, hit him and took his cell phone. The first victim stated that the street was dark, so he could not see the assailants' faces, but he noted they were both black and that one was wearing red shorts and white shoes. He testified that one of the assailants put a knife to his neck and directed him to open the store, so he did. Inside, one assailant — who the first victim later identified as the codefendant — dragged the first victim to the cash register while the assailant with the red shorts, who had donned a mask to cover his face, followed. According to the first victim, the assailants took all of the money in the cash register, money collected from lottery sales and $300 that he had set aside to pay a delivery driver the next day. The first victim admitted that he never saw the face of the assailant with the red shorts, and he never identified defendant as one of the assailants.
Video evidence corroborated the first victim's testimony. Street cameras show two black men — one of whom carried a blue backpack and wore a red T-shirt, red shorts and white shoes — walking in the direction of the store. The two men are seen hiding in the shadows outside the store, then they are seen struggling with a third figure before the three disappeared into the store. Surveillance video from inside the store shows the first victim being dragged to the register by the codefendant. The masked assailant followed, carrying a knife. After the two assailants grabbed the money, they ran from the store. Additional video evidence captured defendant and the codefendant entering an apartment building in Albany approximately 20 minutes later. The codefendant was dressed in the same manner as earlier; defendant was shirtless, wore sagging jeans which revealed blue boxers and red shorts underneath and he carried a blue backpack. When [*3]the two entered the elevator, they appeared to be celebrating. The police also found the first victim's cell phone discarded in a backyard located between the store and the apartment building. During a recorded police interview, defendant denied that he was the man wearing red shorts accompanying the codefendant prior to the robbery and explained that he does not wear or own any type of shorts.
Contrary to defendant's assertion, the People's inability to present an eyewitness who could identify him as one of the assailants did not make the evidence legally insufficient. The first victim explained that he was unable to see the face of the assailant with the red shorts, as the street was very dark and the assailant wore a mask indoors. Regardless, the videos show that the codefendant was accompanied by someone wearing red shorts who shares a striking resemblance to defendant and that those two individuals robbed the first victim. Further, about 20 minutes after the robbery, defendant accompanied the codefendant as the two entered an apartment building. Although defendant was dressed differently, the video shows him wearing red shorts underneath his jeans, as well as the same white shoes and the same blue backpack as the codefendant's companion in the earlier videos. While true that the store's surveillance video did not capture defendant's face, viewing the evidence in the light most favorable to the People, a valid line of reasoning exists through which the jury could have found that defendant was the person observed in the videos with the codefendant, and that defendant's conduct satisfied the elements of robbery in the first degree and robbery in the second degree (see People v Wakefield, 175 AD3d 158, 164 [3d Dept 2019], affd 38 NY3d 367 [2022], cert denied ___ US ___, 143 S Ct 451 [2022]; People v Smith, 174 AD3d 1039, 1042 [3d Dept 2019], lv denied 35 NY3d 1097 [2020]; People v Haggray, 164 AD3d 1522, 1525 [3d Dept 2018], lv denied 32 NY3d 1111 [2018]).
Turning to the weight of the evidence, defendant took the stand and denied any knowledge regarding the robbery of the first victim; rather, he claimed that he was at the home of his then-girlfriend that night. According to defendant, the fact that he and the codefendant arrived at the apartment building together around 2:48 a.m. was merely a coincidence. Consistent with statements that he made during the police interview, defendant denied being the assailant wearing the red shorts, as he did not own or ever wear shorts — an assertion that is contradicted by Facebook images depicting him in shorts. Considering defendant's testimony and the lack of DNA or fingerprint evidence, a different verdict would not have been unreasonable. However, the jury also had the opportunity to listen to the testimony of the first victim and numerous law enforcement witnesses whose credibility was explored during cross-examination and to view the various videos admitted into evidence. Viewing such evidence in a [*4]neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, and deferring to the jury's credibility determinations, defendant's convictions of robbery in the first degree and robbery in the second degree relating to the first victim are not against the weight of the evidence (see People v Shabazz, 211 AD3d 1093, 1098 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]; People v Smith, 174 AD3d at 1042-1043; People v Haggray, 164 AD3d at 1525).
As to the remaining robbery in the second degree conviction, the second victim did not know defendant and the codefendant by name, but she was familiar with them; she explained that they reminded her of her children and she sometimes gave them money. According to the second victim, she received a call from the codefendant on August 3, 2018 asking for money to buy food and diapers for an infant child currently in his care. The second victim testified that she met defendant and the codefendant at a street near an apartment building — the same building that the two entered following the robbery of the first victim — and that both approached her car with no baby in sight. She said that the codefendant sat in the passenger seat of her vehicle, while defendant stood by her open driver side window. The second victim asserted that she told one of them to return to care for the baby while she drove the other to get some supplies for the baby, but they demanded that she give them money. When she refused, the codefendant began hitting her from her right side and defendant hit her from her left side. In the commotion, the codefendant grabbed her cell phone and wallet, then dropped her phone as the two ran in the direction of the building. The second victim went into the apartment building to ask for help. When a police detective arrived, she spoke to him in front of the building, and she then saw defendant exit through a side door. The second victim "jump[ed] on him," hitting him and identifying him as one of her assailants. The detective arrested defendant. The second victim explained that her wallet contained her personal bank card, a bank card for her business, several hundred dollars, a few hundred euros and a check from her pastor. Later, the second victim was shown a photo array and identified the codefendant as the other assailant.
Surveillance videos from the apartment building show that defendant and the codefendant exited the apartment building through the back door and, about 10 minutes later, the two ran back toward the rear entrance. Once in the elevator, the two were captured on video laughing. Upon defendant's arrest, a few hundred dollars and 100 euros were recovered from his person. Further, following a search of an apartment to which defendant had access, the police recovered the second victim's personal bank card, her business bank card, the check from her pastor and several hundred dollars. Viewing such evidence [*5]in the light most favorable to the People, a valid line of reasoning allowed the jury to find that defendant committed the crime of robbery in the second degree (see People v Wakefield, 175 AD3d at 164; People v Smith, 174 AD3d at 1042; People v Haggray, 164 AD3d at 1525).
As to the weight of the evidence, defendant argues that the second victim's testimony is incredible and that his version of events should be credited instead. Through his testimony, defendant admitted that he exited the apartment building with the codefendant but asserted that he went to purchase marihuana nearby while the codefendant met with the second victim. After a few minutes, he saw the codefendant running and, at the codefendant's behest, joined him. According to defendant, the codefendant told him about the robbery when they were in the elevator, which "shocked" him — an assertion that is contradicted by the video. Defendant stated that the codefendant then gave him the money and euros that were in his possession when he was arrested. Had the jury credited defendant's version of events over the second victim's version, a different verdict would not have been unreasonable. However, deferring to the jury's credibility determinations, viewing all of the evidence in a neutral light and weighing the probative force of the conflicting evidence, we are satisfied that defendant's conviction for robbery in the second degree relating to the second victim is not against the weight of the evidence (see People v Shabazz, 211 AD3d at 1098; People v Smith, 174 AD3d at 1042-1043; People v Haggray, 164 AD3d at 1525).
Next, defendant failed to preserve his contention that Supreme Court violated his right to confront the second victim when it failed to provide her an interpreter, as defendant did not object to such alleged failure during the trial (see People v Smith, 193 AD3d 1260, 1269 [3d Dept 2021], lv denied 37 NY3d 968 [2021]; People v Avery, 80 AD3d 982, 984 [3d Dept 2011], lv denied 17 NY3d 791 [2011]). Regardless, although true that the second victim had an imperfect grasp of the English language, we would find that no constitutional violation occurred here; the second victim was responsive to questions posed by defense counsel and requested that certain questions be repeated or rephrased when she did not understand them (see People v Avery, 80 AD3d at 984; People v Bell, 5 AD3d 804, 806 [3d Dept 2004], lv denied 3 NY3d 636 [2004]).
Lastly, defendant argues that the sentence imposed was harsh and severe and asks that it be reduced in the interest of justice. Defendant was sentenced to a prison term of 12 years, followed by five years of postrelease supervision, for his conviction of robbery in the first degree and to a concurrent prison term of eight years followed by five years of postrelease supervision for the conviction of robbery in the second degree relating to the first victim. As to the conviction of robbery in the second degree corresponding to the second victim, Supreme [*6]Court imposed a prison term of eight years, followed by five years of postrelease supervision, to run consecutively to the sentence imposed on the other two convictions. These sentences, which we recognize are not insignificant, are approximately in the middle of the permitted sentencing range for each conviction (see Penal Law § 70.02 [3] [a], [b]), and consecutive sentences were lawfully imposed (see Penal Law § 70.25; People v Cade, 203 AD3d 1221, 1225 [3d Dept 2022]). Although defendant was young when he committed the crimes and his criminal history consisted of only one prior misdemeanor, his crimes demonstrated a callous disregard for the well-being of the victims. Further, he demonstrated no remorse and, instead, laughed at the second victim during various points of her testimony.[FN2] Having reviewed the record, we decline to invoke our interest of justice jurisdiction to reduce defendant's sentence (see People v Thorpe, 141 AD3d 927, 935-936 [3d Dept 2016], lv denied 28 NY3d 1031 [2016]; People v Humphrey, 15 AD3d 683, 686 [3d Dept 2005], lv denied 5 NY3d 763 [2005]).
Defendant's remaining arguments, to the extent not expressly addressed herein, have been examined and found to lack merit.
Garry, P.J., Egan Jr., Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The codefendant has appealed from his convictions, and his appeal remains pending.

Footnote 2: During cross-examination, defendant admitted to laughing at the second victim, claiming that he found her accent funny.