■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER KRUG, Appellant. [725 NYS2d 409] —Spain, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered February 14, 2000, upon a verdict convicting defendant of the crimes of attempted arson in the second degree and endangering the welfare of a child (two counts).

Defendant was convicted after a jury trial of attempted arson in the second degree and two counts of endangering the welfare of a child. The convictions arose out of defendant's actions in the Town of New Scotland, Albany County, on August 21, 1998, when he intentionally tampered with the electric hot water heater located in the basement of a house knowing that the house was occupied by his estranged wife, Susan Krug, their three-year-old daughter and Krug's 15-year-old son, with the intent to cause the hot water heater to overheat and start a fire. Prior to this incident, on July 20, 1998, an order of protec-

tion was issued in Family Court, Albany County, requiring defendant to remove all of his property from the premises before September 1, 1998. Defendant was prohibited from entering the house, but was permitted to enter the garage and the basement without prior notice to Krug for the purpose of removing automobiles and other items.

The trial testimony established that, on the morning of August 21, 1998, defendant was present at the residence moving his collection of antique cars away from the house to other parts of the property. According to Krug's testimony, defendant was the only person with a key to the basement, which was accessible only from the outside of the house. The basement had a dirt floor and was cluttered, except for one small sitting area near the furnace—set aside for defendant's use—which was furnished with, *inter alia*, a chair, a television and a stereo. During the course of the day, Krug went outside, asked defendant to obtain receipts for any cars he sold and began taking photographs of the automobiles and defendant's activities. Defendant became angry and said to her, "you are going to get hurt."

Later that day, after one of the children reported that there was no hot water, Krug entered the open basement and observed that the temperature control on the electric hot water heater was set on high, a panel had been removed from the outside of the tank, and the water valve which feeds water into the recently installed hot water heater was turned off. When Krug opened the water valve, she could hear water flowing back into the tank. She also discovered that the area all around the hot water heater was piled neck-high with newspapers and cardboard boxes and she proceeded to move these items away from the hot water heater. The last time she had seen the hot water heater—as recently as July 14, 1998—there was no debris piled around it. When Krug exited the basement, she observed defendant at the end of the driveway laughing at her and she returned to the house to call the police. Defendant returned to the basement at least once before leaving the premises. Krug also testified that only months earlier, in April 1998, defendant had threatened to hurt the children if she went to work that day; when she asked him what he meant he said, "Oh, I might accidentally set the house on fire."

William Riley, an investigator with the Albany County Sheriff's Department, testified that he went to the house four days after the incident and in the basement near the hot water heater he found two reset switches to a hot water heater (one was burnt), a burnt/partially melted plastic guard and a small

piece of heavy wire. He testified that the plastic guard was the covering for the burnt reset switch. The wire was U-shaped, and the U shape of the wire matched the location of the burn marks on the burnt reset switch. Thereafter, Riley spoke with defendant who eventually gave a written statement that, on the date of the incident, he shut off the intake valve to the hot water tank "as an act of vengeance" because Krug made him "angry and upset." Defendant also stated that he realized that "shutting off the water to the hot water tank could have caused it to overheat and get hot enough to cause a fire. I know this because *it has happened to me in the past*" (emphasis supplied). He further stated, "A while ago I had a similar incident occur where the circuits on a hot water tank have melted and started to burn. I have also seen the damage that this act could have resulted in several years ago when I was in New Jersey I had a fire at my house which was caused by a hot water tank, and it pretty much destroyed everything."

The People offered the testimony of three expert witnesses to prove that defendant's actions could have caused a fire. Richard Sebast, a former service technician for a local company which repairs heating and cooling equipment, testified that when he responded to a prior complaint of no hot water at Krug's residence on July 10, 1998, he observed that the panels—which provide access to the heating elements and to their connected wires—had been removed from the hot water heater and that the high temperature safety switch had tripped for no apparent reason. He explained that when the water gets too hot, a safety reset switch will turn the hot water heater off and then the reset button has to be manually reset to resume the heater's operation. He further testified that it is possible to deliberately cause the water in a hot water heater to overheat by using a jumper wire to bypass the high temperature safety switch on the thermostat, and that such overheating could cause the electrical wires inside the tank to overheat to a point where the plastic panels covering the wires could melt.

Alan Kmieciak, a service technician for the same company, testified that on July 14, 1998, he responded to another complaint of no hot water at the Krug residence and at that point found a burnt-out water heater element and an old thermostat lying on the floor; he also noticed that a piece of plastic located near the upper heating element of the hot water heater had melted. Kmieciak recommended to Krug that she should replace the water heater, and a new hot water heater was installed that day. Kmieciak, like Sebast, testified that the elements of a hot water heater could be overheated by bypassing

the thermostat safety device with a wire and that a fire could possibly be caused if the water supply to a hot water heater is shut off, the tank is left running, the access panels are opened and combustible materials are packed around the water heater.

Robert Muller, a criminal investigator for the Albany County District Attorney and a fire investigation expert, characterized the wire that Riley found in the basement as a "jumper wire." He testified that the wire could fit the hot water heater's control panel so as to bypass the safety shut-off feature, although he never actually took the wire and fitted it to the hot water heater at Krug's house. Muller opined that the combination of turning off the water intake and leaving the panels open and the hot water heater running with combustibles piled around it could result in a fire.

Defendant—the sole witness for the defense—testified that he had been at the house on August 21, 1998 to remove some of his cars and admitted that he had been very annoyed with Krug because she told him that he could not move his cars and, in retaliation, he turned off the intake valve to the hot water heater. He denied having exclusive access to the basement, threatening Krug and that combustible items were piled around the hot water heater that day. Defendant testified that the thought of starting a fire never entered his mind and that when he said in his written statement that he realized his actions could have started a fire, what he meant was that he ultimately realized—after talking to the police—that what he had done could have started a fire.

Upon the jury's guilty verdict, County Court sentenced defendant to a term of imprisonment of 6½ to 13 years for attempted arson in the second degree, and two one-year jail terms for endangering the welfare of a child.

Defendant appeals, first contending that the jury's verdict is not supported by legally sufficient evidence and, alternatively, is against the weight of the evidence. The well-settled standard applied on appellate review of a claim challenging the legal sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*Jackson v Virginia*, 443 US 307, 319 [emphasis in original]; *see, People v Taylor*, 94 NY2d 910, 911; *People v Williams*, 84 NY2d 925, 926; *People v Contes*, 60 NY2d 620, 621). Penal Law § 150.15 provides as follows: "A person is guilty of arson in the second degree when he intentionally damages a building * * * by starting a fire, and when (a) another person who is not a participant in the crime

is present in such building * * * at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such person therein a reasonable possibility." A person is guilty of attempt "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00).

Upon our review of the evidence in the light most favorable to the prosecution, we find that defendant acted with the intent to set fire to the house, engaged in conduct which could have resulted in a fire, and did so with the knowledge that Krug and the children were inside the house. The conclusion that the evidence was legally sufficient to support the verdict of attempted second degree arson is based on the considerable evidence of defendant's guilt, especially defendant's statements and the testimony of the three experts.

Turning to the remaining conviction, a person is guilty of endangering the welfare of a child when "[h]e knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child" (Penal Law § 260.10). In light of our conclusion that legally sufficient evidence exists that defendant committed attempted arson in the second degree and given defendant's admission that he was aware of the children's presence in the house, the jury rationally found beyond a reasonable doubt that defendant endangered the welfare of the children.

We also reject defendant's contentions that the verdict was contrary to the weight of the evidence. In determining whether a verdict is against the weight of the evidence, this Court must independently review the evidence and, if a different result would not have been unreasonable, we must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62; *see, People v White*, 261 AD2d 653, 656, *lv denied* 93 NY2d 1029; *People v Rose [Cousins]*, 215 AD2d 875, 877, *lv denied* 86 NY2d 793, 801). On this review, we accord "[g]reat deference * * * to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley, supra*, at 495). If it appears that the trier of fact failed to give the evidence the weight it should be accorded, this Court may set aside the verdict (*see*, CPL 470.20 [5]; *People v Bleakley, supra*, at 495; *People v White, supra*).

Here, although a different result would not have been unreasonable, we find that the probative force of the conflicting

testimony supports the jury's verdict. In particular, we find defendant's admissions, his threats, his access to the basement, his experiences with hot water heaters overheating—including the New Jersey house fire—and the problems related to the functioning of the replaced hot water heater all extremely probative of his guilt. This evidence, combined with the presence of the U-shaped wire and the loose components and defendant's admitted incriminating actions on the day of the incident—moving all but one of his cars away from the house and turning off the hot water at the tank as an "act of vengeance"—as well as Krug's testimony and the testimony of the experts, amply supports the conclusion that defendant's intentional actions could have caused a fire and that he acted with that knowledge. Accordingly, we find that the jury's verdict is in all respects supported by the weight of the evidence.

Likewise, we find unpersuasive defendant's assertion that there was insufficient proof that the crimes were committed to corroborate his confession. While defendant is correct that a person cannot be convicted on the basis of a confession alone (*see*, CPL 60.50), "such [corroborating] evidence need not establish guilt or corroborate every detail of the confession" (*People v Guillery*, 260 AD2d 661, *lv denied* 93 NY2d 971; *see, People v Henry*, 222 AD2d 932, 935, *lv denied* 88 NY2d 848). Rather, the corroboration requirement will be satisfied by the "production of some proof, of whatever weight, that a crime was committed by someone" (*People v Daniels*, 37 NY2d 624, 629; *see, People v Booden*, 69 NY2d 185, 187; *People v Philipp*, 106 AD2d 681, 682). Here, the physical evidence introduced at trial, as well as the expert and other testimony, clearly provided the requisite "some proof."

Turning to defendant's contention that County Court's ruling on relevancy and remoteness grounds limiting his cross-examination of Krug was erroneous and denied him his right of confrontation under the 6th Amendment, we find no abuse of discretion in the court's limitation of the scope of the inquiry (*see, People v Yusufi*, 247 AD2d 648, 650, *lv denied* 92 NY2d 863; *People v Gutkaiss*, 206 AD2d 584, 585-586, *lv denied* 84 NY2d 936). We further conclude that defendant failed to preserve for appeal his argument that the court erred in admitting evidence relating to problems with the previous hot water heater and the presence of a bypass wire because the prosecution failed to lay a sufficient foundation (*see*, CPL 470.05; *People v Benton*, 115 AD2d 916, 917; *see also, People v Snyder*, 249 AD2d 643; *People v Keller*, 194 AD2d 877, *lv denied* 81 NY2d

1074). Were we to reach this issue, we would conclude that there was sufficient circumstantial evidence to connect defendant to the problems with the previous hot water heater and the wire and that the evidence was properly admitted.

Finally, we reject defendant's contention that the sentence imposed for his conviction of attempted arson in the second degree was harsh and excessive. Here, defendant received a sentence of 6½ to 13 years, within the statutory parameters for a class C violent felony offense. County Court noted on the record its consideration of the circumstances surrounding both the crimes and defendant (*see, People v Morin*, 192 AD2d 791, 794, *lv denied* 81 NY2d 1077). The court properly balanced the seriousness of the crime and defendant's lack of remorse against the numerous letters received from family and friends in support of defendant and the fact that defendant had no prior criminal record other than a violation of an order of protection on the date in question. In our view, defendant failed to show any extraordinary circumstances warranting a reduction and, thus, we cannot conclude that County Court abused its discretion in sentencing defendant.

We have considered defendant's remaining contentions and find they are either unpreserved or without merit.

Cardona, P. J., Crew III, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed.