■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM FIGUEROA, Appellant. [861 NYS2d 216]—

Peters, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered January 8, 2007, upon a verdict convicting defendant of three counts of the crime of aggravated harassment of an employee by an inmate.

Defendant was convicted following a jury trial of three counts of aggravated harassment of an employee by an inmate, stemming from three incidents wherein he threw liquified feces and urine at correction officers while housed in the special housing unit (hereinafter SHU) of the Sullivan Correctional Facility in Sullivan County. He was sentenced, as a second felony offender, to consecutive terms of 2 to 4 years in prison on each count, to run consecutively to his current term of incarceration.

Defendant appeals, first asserting that the verdict is against the weight of the evidence. At trial, correction officers John Spath and William Cole each testified that, while passing out meals to the inmates, a liquid substance later determined to be feces was ejected from beneath defendant's cell door, striking Cole's boots and splattering across the width of the hallway cor-

ridor. Immediately after the incident, correction officer Edward Madison, who was assigned to collect physical evidence of the scene, observed defendant screaming and kicking the cell door while throwing cups of the feces mixture under the door. When Madison attempted to communicate with defendant, who is deaf and has difficulty communicating verbally, by writing him a note asking what the problem was,* defendant again heaved a cup of feces under his cell door that hit Madison's protective suit. Later that evening, Spath, while distributing medication to the inmates with nurse Florence Seargent, observed defendant holding a cup while positioned on his hands and knees by the door of his cell. After cautioning defendant, Spath was struck by a cup of feces projected from underneath the doorway. Seargent confirmed that a liquid substance "flew" out from under the door and hit Spath's boot.

Defendant, on the other hand, testified that the toilet in his cell had exploded, causing water, urine and feces to spew out onto the floor of the cell and under the door into the hallway. He denied throwing feces at the correction officers and contended that, despite his attempts to inform the officers about the toilet problem, they refused to listen. Although a different verdict would not have been unreasonable had the jury chose to credit defendant's testimony, issues of credibility are within the province of the jury and we accord great deference to such credibility determinations (*see People v Gathers*, 47 AD3d 959, 960 [2008]; *People v Williams*, 40 AD3d 1364, 1366 [2007], *lv denied* 9 NY3d 927 [2007]). Viewing the evidence in a neutral light (*see People v Bleakley*, 69 NY2d 490, 495 [1987]), we find that the verdict was not against the weight of the evidence.

Similarly unavailing is defendant's argument that reversal is required because County Court did not give an adverse inference charge regarding the People's failure to produce a surveillance videotape. Correction officer James Schmidt testified that, in accordance with Sullivan Correctional Facility practice, the surveillance tape that should have contained footage of the incidents was secured and thereafter "decoded" by him so that it could be viewed, but, upon attempting to view the videotape, he found that it was blank. Schmidt further testified that all surveillance tapes within the facility were blank during the week of the incident due to an officer's inadvertent use of the wrong button on the surveillance recording machine. As such,

---

* Despite defendant's impairments, the testifying officers stated that they had no trouble communicating with defendant, whether it was through sign language, hand gestures, written notes or by speaking to him (defendant allegedly could read lips).

there is no indication in the record that footage of the incident was ever in existence. Even assuming that it was, inasmuch as the Department of Correctional Services acts as an administrative agency when it maintains surveillance cameras, materials in its possession are not within the control of the People and, consequently, the People have no obligation to produce them (*see People v Howard*, 87 NY2d 940, 941 [1996]; *People v Ross*, 282 AD2d 929, 931 [2001], *lv denied* 96 NY2d 907 [2001]; *People v Livingston*, 262 AD2d 786, 790 [1999], *lv denied* 94 NY2d 881 [2000]). For this reason, the "alleged failure to maintain the videotape may not be imputed to the People" (*People v Ross*, 282 AD2d at 931; *see People v Kelly*, 88 NY2d 248, 253 [1996]; *People v Bingham*, 12 AD3d 784, 785 [2004]) and, therefore, a missing evidence charge was unwarranted (*see People v Murphy*, 128 AD2d 177, 183 [1987], *affd* 70 NY2d 969 [1988]; *see generally People v Savinon*, 100 NY2d 192, 198 [2003]).

Finally, we are unpersuaded by defendant's contention that his sentence was harsh and excessive. The sentence imposed was less than the maximum allowable and, in light of defendant's extensive disciplinary record, as well as his prior criminal history, we find neither an abuse of discretion by the sentencing court nor extraordinary circumstances that would warrant a modification of the sentence in the interest of justice (*see People v Studstill*, 27 AD3d 833, 834 [2006], *lv denied* 6 NY3d 898 [2006]; *People v Thomas*, 24 AD3d 949, 950 [2005], *lv denied* 6 NY3d 819 [2006]).

Cardona, P.J., Carpinello, Rose and Malone Jr., JJ., concur. Ordered that the judgment is affirmed.