(January 21, 2010)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY NESBITT, Appellant. [894 NYS2d 545]—

McCarthy, J.

On November 8, 2005, defendant threatened to set fire to an apartment house in the City of Schenectady, Schenectady County where his two young children (born in 2001 and 2003) were living with their mother, defendant's former fiancée. The mother and the children, together with a neighbor and her young child (born in 2002), had just returned to the apartment house from shopping at approximately 8:15 that evening. An area of the building's wooden porch was soaked with gasoline. Immediately upon entering the neighbor's apartment, the mother received a telephone call from defendant in which he threatened to burn her up. The call caused the mother to believe that defendant, who did not live in the immediate vicinity, had

observed their return to the apartment and was still in the area. The mother called the police, who responded together with fire department personnel and equipment. The potential fire hazard was resolved. The mother filed a complaint against defendant with the police and obtained a protective order requiring defendant to stay away from her and their children. Warrants were issued for defendant's arrest.

On December 13, 2005, defendant's children were with defendant, with the mother's permission, while she was at work. The mother testified that the maternal grandmother, who usually watched the children when the mother was at work, was sick that day and no one else was available to watch them. Because the mother was still on probationary status at her new job, she could not afford to miss work, so she asked defendant to watch them.* Officers from Child Protective Services contacted defendant in person that day and informed him of the protective order. Defendant denied that the children were with him and refused to allow the officers in the house. Later that day, he took the children to the mother's apartment without her knowledge. When officers from Child Protective Services and the police arrived at the mother's apartment, defendant refused to answer the door or let them in. After a prolonged stand-off, the police forcibly entered the apartment, with guns drawn, and located defendant and the children in a bedroom. While standing next to his children, defendant challenged police to shoot him. Defendant was ultimately subdued, handcuffed and placed under arrest. After being transported to the police station, defendant initially refused to provide police with his pedigree information.

As a result of the foregoing, the grand jury issued a 13-count indictment. After a jury trial, defendant was convicted of attempted arson in the second degree, aggravated harassment in the second degree, and three counts of endangering the welfare of a child in connection with the events of November 8, 2005. He was also convicted of two counts of endangering the welfare of a child and one count each of resisting arrest and obstructing governmental administration in the second degree in connection with the events of December 13, 2005. This appeal ensued.

Defendant's challenge to the legal sufficiency of the evidence supporting his convictions was not properly preserved for appel-

---

* For placing the children in defendant's care, the mother was charged with and pleaded guilty to endangering the welfare of a child and disorderly conduct. In exchange for her trial testimony, the endangerment charge was dismissed and the mother was sentenced to time served on the disorderly conduct charge.

late review by defendant's general trial motion to dismiss all charges at the close of the People's evidence (*see People v Finger*, 95 NY2d 894, 895 [2000]; *People v Bynum*, 70 NY2d 858, 859 [1987]; *see generally People v Gray*, 86 NY2d 10, 19-22 [1995]). Nevertheless, we are required to examine the sufficiency of the proof in light of the elements charged as part of our independent review of the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Caston*, 60 AD3d 1147, 1148-1149 [2009]; *People v Loomis*, 56 AD3d 1046, 1046-1047 [2008]). In determining whether the verdict is properly supported, we review "all the credible evidence" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), including evidence submitted by the defense (*see generally People v Hines*, 97 NY2d 56, 61 [2001]), to ascertain whether such evidence was accorded the proper weight by the jury. In so doing, we view the evidence from a neutral perspective, according appropriate deference to the jury's credibility determinations (*see People v Bleakley*, 69 NY2d at 495; *People v Barringer*, 54 AD3d 442, 443 [2008], *lv denied* 11 NY3d 830 [2008]; *People v Figueroa*, 53 AD3d 779, 780 [2008], *lv denied* 11 NY3d 832 [2008]).

The only evidence directly connecting defendant to the events in Schenectady on November 8, 2005 comes from the mother's trial testimony and the tape of her 911 call in which she identifies defendant as having just called her to say that he saw her enter the house, admitted pouring gas on the porch and hoped that she burned. Defendant testified at trial and admitted calling the mother, but claimed he was in the City of Albany at the time and was just calling to inquire about their son's winter boots, thereby placing defendant's credibility in issue. Phone records and testimony from the mother and a police officer who was with the mother at the police station at the time that defendant claimed to be speaking with her on the phone in her neighbor's apartment all combined to render defendant's alibi testimony utterly incredible, and disproved the alibi beyond a reasonable doubt. Further evidence tending to support the conclusion that defendant was the perpetrator of the attempted arson was admitted under County Court's *Molineux* ruling, which established a pattern of violent assaults by defendant on the mother in the presence of their children. Police and fire department officers confirmed the presence of gasoline on the porch, and the presence of the mother, her neighbor and the children in the apartment building. Charles Adams, a veteran lieutenant with the Schenectady Fire Department who responded to the scene, testified persuasively that, based on his experience and training in arson investigations, he determined that the gasoline soak pattern on the porch reflected a pour,

rather than a spill, and was indicative of attempted arson. He also testified that if the gasoline had ignited, flames would have quickly traveled up the staircase, trapping the occupants on the upper floors of the building.

Officers from both Child Protective Services and the Schenectady Police Department testified regarding the events of December 13, 2005. The testimony established that defendant misled Child Protective Services that morning by denying that the children were with him at his mother's home, and that he subsequently took the children to their mother's apartment, where, for at least 20 to 25 minutes, he refused to respond to police demands that he open the door. Ultimately, the police had to forcibly enter the apartment. Several police witnesses established that defendant refused to cooperate when police entered with guns drawn, and that he escalated the dangerous situation by challenging the police to shoot him in front of the children, who were sitting next to him in the small, dimly lit bedroom where the police encountered them. Police employed pepper spray in the small room, but were able to avoid harm to the children. Defendant, who admitted that he was aware of at least one of his outstanding arrest warrants at the time, continued to physically resist and verbally abuse the police officers trying to effectuate the arrest warrants, even after pepper spray and handcuffs were employed to subdue him. He also admitted that while being processed at the police station, when asked for pedigree information, he initially refused to answer legitimate questions posed by the police. Based on the foregoing, we find that defendant's convictions are amply supported by the weight of the credible evidence.

Prior to imposing defendant's sentence, County Court considered the trial evidence and comments by the prosecutor, defense counsel and defendant, as well as defendant's probation report and prior criminal history, which consisted of several misdemeanor convictions and disregard of prior court orders. County Court noted defendant's history of violence toward the mother and that his affection for his children was marred by his poor judgment. The court also noted that defendant did not ignite the gasoline on the porch during the attempted arson. Defendant was sentenced to a prison term of six years on the attempted arson conviction, concurrent terms of one year on each of the remaining convictions, and three years of postrelease supervision. County Court also imposed an order of protection requiring defendant to stay away from the mother and their children, subject to any court ordered visitation. We find no abuse of discretion in the sentence imposed on defendant as a

first time violent felony offender, nor any extraordinary circumstances warranting a reduction in the interest of justice (*see People v Krug*, 282 AD2d 874, 880 [2001], *lv denied* 98 NY2d 652 [2002]).

Defendant's remaining contentions were not preserved for our review. Were we to consider them, we would find them to be without merit.

Cardona, P.J., Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the judgment is affirmed.