*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 5, 2015                106118
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                MEMORANDUM AND ORDER

ARMANDO LIND,
                    Appellant.
_____


Calendar Date:   September 9, 2015

Before:  Peters, P.J., Lahtinen, Garry and Rose, JJ.


                        _____



        Jack H. Weiner, Chatham, for appellant.

        P. David Soares, District Attorney, Albany (Michael C.
Wetmore of counsel), for respondent.


                        _____



Garry, J.

        Appeal from a judgment of the Supreme Court (Breslin, J.),
rendered July 10, 2013 in Albany County, upon a verdict
convicting defendant of the crimes of attempted arson in the
second degree and endangering the welfare of a child (two
counts).

        After an altercation with his adult daughter, defendant
doused a bedroom in his home with gasoline and threatened to burn
the house down.  Several members of defendant's family, including
defendant's two young grandchildren, were in the residence at the
time.  Defendant was charged with attempted arson in the second
degree and two counts of endangering the welfare of a child.
Following a jury trial, he was convicted as charged and sentenced
to a prison term of seven years followed by five years of

postrelease supervision on the attempted arson conviction, and concurrent terms of one year each on the convictions for endangering the welfare of a child.  Defendant appeals.

Defendant contends that a recording of a 911 call made by his adult son should not have been admitted into evidence and, further, that in the absence of the recording, his convictions were not supported by legally sufficient evidence and were against the weight of the evidence.  We disagree.  A 911 dispatcher testified that he received a call on the morning of the incident from a "very excited" male caller who reported the location and nature of the emergency but did not provide his name.  The dispatcher confirmed that he had listened to the recording of this conversation before the trial and that it was fair, accurate and unaltered.  The People sought to admit the recording based upon this testimony; defendant objected, and Supreme Court reserved judgment.  A police officer then testified that he responded to defendant's address after the dispatching center informed him that a 911 caller had reported that gasoline had been poured inside a residence at that address and a subject had threatened to burn the house down.  The court allowed this testimony for the limited purpose of explaining the actions taken by the officer and not for its truth, and so advised the jury. The officer then testified that he listened to the recording of the 911 call after the incident and recognized the caller's voice as that of defendant's son, with whom he had had numerous contacts.  Following this testimony, the court admitted the recording into evidence, over defendant's renewed objection, and permitted the People to play it for the jury.  On the recording, agitated voices, including those of children, can be heard in the background as the caller reports that his father threatened to burn the house down and poured gasoline in a bedroom.

Contrary to defendant's various contentions upon appeal, we find no error in Supreme Court's determination on this issue. The testimony of the officer and dispatcher, taken together, provided the requisite foundation, consisting of "proof of the accuracy or authenticity of the tape by clear and convincing evidence establishing that the offered evidence is genuine and that there has been no tampering with it" (People v Ely, 68 NY2d 520, 527 [1986] [internal quotation marks and citation omitted];

accord People v Bell, 5 AD3d 858, 861 [2004]). Moreover, when defendant's son testified after the tape was admitted, he acknowledged that he had called 911 and that the voice on the recording was his. The recording was admissible as an excited utterance, as the evidence established that it was "made under the stress of excitement caused by an external event, and [was] not the product of studied reflection and possible fabrication" (People v Johnson, 1 NY3d 302, 306 [2003]; accord People v Haskins, 121 AD3d 1181, 1183 [2014], lv denied 24 NY3d 1120 [2015]; see People v Rodriguez, 306 AD2d 686, 688 [2003], lv denied 100 NY2d 624 [2003]). Defendant's confrontation rights were not violated, as defendant had the opportunity to cross-examine the son when he testified (see Crawford v Washington, 541 US 36, 59 [2004]). Further, the call – made for the purpose of obtaining an emergency response – was nontestimonial (see People v Warren, 124 AD3d 699, 701 [2015]; People v Anderson, 114 AD3d 1083, 1085 [2014], lv denied 22 NY3d 1196 [2014]).

As for the legal sufficiency and weight of the evidence, a neighbor testified that she heard "screaming and yelling" from defendant's home and saw defendant leave the house, go into the backyard where a shed was located, and reenter the house carrying two red gasoline cans. Thereafter, according to the neighbor, "[t]here was a lot of jumping and noise and even the garage door was, like, moving." The neighbor then saw defendant's adult daughter emerge from the house, gagging, coughing and carrying a baby. The police officer who responded to the 911 call testified that, as he approached defendant's residence, he was able to smell gasoline from 100 to 150 feet away. Defendant was in front of the house, smoking a cigarette, and attempted to enter the residence when he saw the officer, but stopped when commanded to do so. Defendant's wife, daughter, son and two grandchildren were indoors, where the odor of gasoline was so strong that the officer moved the family outside. A fire department lieutenant testified that he could smell gasoline outside defendant's residence and that the smell was strongest inside an upstairs room that appeared to be a child's bedroom, where the walls were spattered and pools of gasoline were visible on the carpet. Readings from the lieutenant's air quality meter revealed 200 parts per million of gasoline in the air of this room, a level known to cause coughing and eye and throat irritation and capable

-4-                          106118

of causing ignition from sparks or other sources in nearby rooms.
The lieutenant remediated the hazard by ventilating the house
with fans, a process that took approximately two hours.

Defendant's son testified for the People as a hostile
witness pursuant to a material witness warrant, stating that when
the son awoke on the morning of the incident, he heard defendant
arguing with defendant's daughter and telling her to get out of
the house. He acknowledged that he placed the 911 call, but
offered testimony that otherwise conflicted with the statements
made in the course of that call. For example, the son testified
that he did not see defendant pour the gasoline and did not know
that any gasoline had been poured; however, he had told the 911
dispatcher that "[defendant] poured it in one room and I left the
room. I took the kid and got out of the room." In his
testimony, the son made other statements that essentially
attempted to minimize his concern and rebut the inferences that
might be drawn from the recording relative to the severity of the
situation and his perceptions of the danger.

The trial testimony and evidence, taken as a whole and
viewed in the light most favorable to the People, provided a
valid line of reasoning from which the jury could have found that
defendant intended to commit the crime of arson in the second
degree — as evidenced by his threat to burn the house down — that
he engaged in conduct tending to effect the commission of the
crime by pouring gasoline indoors, and that he did so while two
minor children were in the house. Accordingly, the evidence was
legally sufficient to support his convictions (see Penal Law
§§ 150.15, 110.00, 260.10; People v Adams, 222 AD2d 1124, 1124
[1995], lv denied 87 NY2d 1016 [1996]; People v Clemmons, 173
AD2d 723, 723 [1991], lv denied 78 NY2d 964 [1991]). The
contradictions between the son's trial testimony and his
statements on the 911 recording presented credibility issues for
the jury to resolve and, according the appropriate deference to
these assessments, we find that the verdict is in accord with the
weight of the evidence (see People v Abare, 86 AD3d 803, 804
[2011], lv denied 19 NY3d 861 [2012]; People v Nesbitt, 69 AD3d

1109, 1111-1112 [2010], lv denied 14 NY3d 843 [2010]).[1]

Finally, we reject defendant's contention that his sentence is unduly harsh. The fact that the sentence is longer than one offered by the People during pretrial plea negotiations, without more, does not demonstrate that defendant was punished for asserting his right to trial, and the record contains no evidence of retribution or vindictiveness (see People v Fletcher, 309 AD2d 1085, 1086 [2003], lv denied 1 NY3d 571 [2003]). After considering defendant's family obligations and the many letters submitted by his friends and relatives attesting to his good character, Supreme Court imposed a considerably shorter sentence than the potential 15-year maximum (see Penal Law §§ 70.02 [3] [b]; 110.05 [4]; 150.15). In view of the nature of defendant's offenses and his criminal history, we find no abuse of discretion or extraordinary circumstances warranting a modification in the interest of justice (see People v Nesbitt, 69 AD3d at 1112-1113; People v Krug, 282 AD2d 874, 880 [2001], lv denied 98 NY2d 652 [2002]).

Peters, P.J., Lahtinen and Rose, JJ., concur.

---

[1] Defendant argues that the People failed to support one of his convictions for endangering the welfare of a child with proof of the younger grandchild's date of birth. This contention was unpreserved, but we necessarily examine the sufficiency of the elements of each charged crime as part of our review of the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). The testimony established that the grandchild was no more than two years old at the time of the incident (see Penal Law § 260.10 [1]).

ORDERED that the judgment is affirmed.




                    ENTER:

                    Robert D. Mayberger
                    Clerk of the Court