People v Rodriguez (2021 NY Slip Op 03872)





People v Rodriguez


2021 NY Slip Op 03872


Decided on June 17, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 17, 2021

110818
[*1]The People of the State of New York, Respondent,
v
Willie Rodriguez, Appellant.

Calendar Date:April 22, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Willie Rodriguez, Comstock, appellant pro se.
David J. Clegg, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered November 28, 2018, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third degree.
In February 2018, following a joint investigation by the Ulster Regional Gang Enforcement Narcotics Task Force and the Community Narcotics Enforcement Team, defendant was indicted and charged with one count of criminal possession of a weapon in the second degree, one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree.[FN1] The charges stemmed from the targeted purchase of two handguns that had been reported stolen from the vehicle of a retired police officer in December 2018. As part of an undercover buy operation, a confidential informant (hereinafter CI) purchased one of the stolen handguns and, minutes later, defendant allegedly purchased the other. Police thereafter executed a traffic stop of defendant's vehicle and, following a search thereof, found, among other things, a loaded Smith & Wesson .380 caliber handgun and a quantity of heroin in the vehicle.[FN2] Defendant filed an omnibus motion seeking to, among other things, dismiss the indictment and suppress the evidence seized but, following a hearing, County Court denied the suppression motion. Following a jury trial, defendant was convicted of criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third degree but was acquitted of criminal sale of a controlled substance in the third degree. County Court denied defendant's subsequent motion to set aside the verdict pursuant to CPL 330.30, and he was thereafter sentenced to a prison term of 13 years, to be followed by five years of postrelease supervision, on the second degree criminal possession conviction and to a lesser concurrent prison term on the remaining conviction. Defendant appeals.
Initially, defendant's contention that the integrity of the grand jury proceedings was impaired based upon the People's presentation of the charges to multiple grand juries and improperly amending the indictment is unpreserved for our review as these issues were not addressed in his motion to dismiss the indictment (see CPL 210.20 [3]; People v Sutton, 174 AD3d 1052, 1054 [2019], lv denied 34 NY3d 954 [2019]).[FN3] Similarly, defendant waived any claim regarding the misjoinder of defendants as he failed to raise this issue before County Court (see People v Peters, 249 AD2d 987, 987 [1998], lv denied 92 NY2d 903 [1998]; People v Dumblewski, 61 AD2d 875, 876 [1978]).[FN4] Additionally, as defendant has not challenged the legal sufficiency of the evidence presented at trial, it is presumed legally sufficient and, therefore, his contention that the legal instructions provided to the grand jury were insufficient is precluded (see [*2]CPL 210.30 [6]; People v Weaver, 167 AD3d 1238, 1239 [2018], lv denied 33 NY3d 955 [2019]).
Defendant next contends that County Court erred in denying his suppression motion because the police lacked probable cause to effectuate a stop of his motor vehicle. We disagree. Police are permitted to conduct a traffic stop where there is "a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing or are about to commit a crime" (People v Houghtalen, 89 AD3d 1163, 1164 [2011] [internal quotation marks and citation omitted]). To that end, a CI's tip "may provide reasonable suspicion . . . if the People demonstrate the informant's reliability and the basis of his or her knowledge" (People v Portelli, 116 AD3d 1163, 1164 [2014] [internal quotation marks and citation omitted]; accord People v Cook, 134 AD3d 1241, 1243 [2015], lv denied 26 NY3d 1143 [2016]). Police officers are also "entitled to act upon information received from other officers" (People v Douglas, 42 AD3d 756, 758 [2007], lv denied 9 NY3d 922 [2007]; see People v Cummings, 157 AD3d 982, 984 [2018], lv denied 31 NY3d 982 [2018]). Ultimately, the "[f]actual determinations of the suppression court are entitled to great weight and will not be overturned unless clearly contrary to the evidence, taking into consideration the court's credibility determinations" (People v Weishaupt, 118 AD3d 1100, 1102 [2014] [internal quotation marks and citation omitted]; see People v Rudolph, 170 AD3d 1258, 1259 [2019], lv denied 34 NY3d 937 [2019]).
The evidence at the suppression hearing established that, on December 21, 2018, two handguns were reported stolen from the vehicle of a retired police officer in the Village of Saugerties, Ulster County. The following day, a state trooper received a telephone call from a CI indicating that a person by the name of "Cutty" had offered to sell him the subject guns. The trooper worked with this CI on over 20 prior narcotics and firearm operations wherein he had provided reliable and trustworthy information and, in turn, the trooper passed this information on to a detective from the Ulster County Sheriff's Department. The detective was actively investigating the stolen guns, was familiar with Cutty, i.e., Skylar Eichert, and knew his home address. An undercover purchase operation was thereafter organized, a surveillance team was assembled, the CI was searched, provided with $1,000 in prerecorded buy money and outfitted with an audio recording device, and an undercover officer thereafter drove the CI to Eichert's residence to purchase the two handguns.
At approximately 8:00 p.m., the CI entered Eichert's residence. Approximately 10 minutes later, while the CI was still inside, a black Honda Accord with Wisconsin license plates arrived and a Hispanic male — later identified as defendant — exited the driver side of the vehicle and entered the same residence. The surveillance team listened to the transaction in real time via [*3]the CI's recording device as the CI, Eichert and defendant discussed the purchase of the guns. A few minutes later, the CI exited the residence with a backpack and informed the undercover officer that he had purchased one of the two guns but that defendant was presently in the residence purchasing the second one. This information was relayed to the surveillance team and the CI and the undercover officer then left the scene to go to a predetermined meet location while the surveillance team remained behind to continue surveilling the residence and the black Honda. Approximately five minutes later, defendant exited the residence and drove off in the Honda. The officers followed defendant and, a few blocks later, effectuated a traffic stop. Defendant exited the driver side of the vehicle with his hands in the air and was taken into custody, and a pistol magazine and one round of ammunition was found in his right pants pocket. Defendant thereafter told officers that there was a handgun in the glove box of his vehicle, where it was subsequently located. A subsequent search of a female passenger revealed that she had a quantity of heroin on her person.
Based on the foregoing, we find that County Court appropriately determined that the police had a reasonable suspicion of criminal activity to justify the stop of defendant's vehicle. The officers who effectuated the traffic stop had been informed by the undercover officer that the CI — who had been demonstrated to be reliable and trustworthy — had purchased one of the two stolen handguns and indicated that the individual who entered Eichert's residence after him was purchasing the second stolen handgun. The surveilling officers had observed this individual enter the residence, had overheard the subsequent discussion regarding the guns on the CI's recording device and thereafter observed the same individual exit the residence. Accordingly, the officers had a reasonable suspicion that defendant had committed a crime and, therefore, the stop of defendant's vehicle was lawful (see People v Cook, 134 AD3d at 1243; People v Portelli, 116 AD3d at 1164), as was the search of his vehicle and his arrest (see People v Clark, 153 AD3d 1093, 1095 [2017], lv denied 30 NY3d 979 [2017]; People v Coffey, 107 AD3d 1047, 1049-1050 [2013], lv denied 21 NY3d 1041 [2013]).
We find no error with County Court's challenged evidentiary rulings.[FN5] With respect to the admission of the audio recording from the CI's recording device, the People properly authenticated the recording, identified the voices thereon and established that it was genuine and had not been tampered with (see People v Ely, 68 NY2d 520, 527 [1986]; People v Lind, 133 AD3d 914, 915 [2015], lv denied 27 NY3d 1153 [2016]; People v Galunas, 107 AD3d 1034, 1034 [2013]). Although certain portions of the audio are difficult to understand, a transcript of the recording was used by the jury for the limited purpose of following along at trial, and there is no [*4]dispute that the transcript accurately reflected the audible portions of the recorded conversations. We concur, therefore, with County Court that the recording was independently audible so as "to allow the jurors to discern [its] contents without resorting to speculation" (People v Russell, 167 AD3d 1326, 1329 [2018], lv denied 33 NY3d 981 [2019]; see People v Pettigrew, 161 AD3d 1306, 1309 [2018], lv denied 32 NY3d 940 [2018]; People v Rostick, 244 AD2d 768, 768 [1997], lv denied 91 NY2d 929 [1998]). Additionally, defendant's challenge to a purportedly hearsay statement testified to by the undercover officer is unpreserved (see People v Sukhdeo, 103 AD3d 673, 674 [2013], lv denied 21 NY3d 914 [2013]). Further, regarding certain hearsay statements attributed to Eichert, these challenges were rendered moot as said statements pertained solely to the charge for which defendant was acquitted (see People v Rouse, 155 AD3d 555, 556 [2017], lv denied 30 NY3d 1119 [2018]).
Defendant's remaining contentions do not require extended discussion. Defendant's contention that County Court provided improper responses to two jury notes was not preserved for our review (see People v Leonard, 177 AD3d 1158, 1162 [2019], lv denied 34 NY3d 1160 [2020]). To the extent that he contends that said responses constituted a mode of proceedings error, the challenged jury notes only requested to view trial exhibits that had already been admitted into evidence and, therefore, the court's actions were ministerial not substantive in nature (see People v Nealon, 26 NY3d 152, 161 [2015]; People v Herring, 189 AD3d 1614, 1615 [2020], lv denied 36 NY3d 1097 [2021]). Defendant also failed to preserve his contentions that the People engaged in prosecutorial misconduct during summation (see People v Hilton, 185 AD3d 1147, 1150 [2020], lv denied 35 NY3d 1095 [2020]) and committed a Brady violation (see People v Pizarro, 185 AD3d 1092, 1093-1094 [2020]).[FN6] In any event, to the extent that the People's purported Brady violation involves allegations that fall outside the record, said claim is more appropriately the subject of a CPL article 440 motion (see People v Brown, 139 AD3d 1178, 1179 [2016]).
Finally, we reject defendant's contention that he received ineffective assistance of counsel. The majority of defendant's arguments in this regard involve matters that cannot be determined without reference to information that is outside the record and are more properly raised in the context of a CPL article 440 motion (see People v Horton, 173 AD3d 1338, 1341-1342 [2019], lv denied 34 NY3d 933 [2019]; People v Howe, 164 AD3d 951, 952 [2018], lv denied 32 NY3d 1112 [2018]). Further, on the record before us, it is evident that counsel filed appropriate pretrial motions, rendered appropriate evidentiary objections at trial, effectively cross-examined witnesses, made cogent opening and closing statements, pursued a reasonable trial strategy and ultimately obtained an acquittal of one of [*5]the three charges against defendant such that, when viewed in totality, we are satisfied that defendant received meaningful representation (see People v Porter, 184 AD3d 1014, 1019 [2020], lv denied 35 NY3d 1069 [2020]). To the extent not specifically addressed, defendant's remaining contentions have been reviewed and found to be without merit.[FN7]
Garry, P.J., Lynch and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was indicted as part of a 20-count indictment involving two codefendants. His codefendants pleaded guilty before his trial.

Footnote 2: The heroin was discovered following the search of a female passenger in defendant's vehicle. Defendant was also subsequently implicated and charged for his alleged involvement in a separate drug sale that occurred on December 1, 2018.

Footnote 3: In any event, defendant's contentions are without merit as there is nothing in the record demonstrating that the subject charges were, in fact, presented to multiple grand juries or that the indictment was ever amended.

Footnote 4: Defendant's challenge to the underlying felony complaint was rendered academic as it was superseded by a valid indictment (see People v Drayton, 183 AD3d 1008, 1012 [2020], lv denied 35 NY3d 1065 [2020]; People v Thacker, 173 AD3d 1360, 1362 [2019], lv denied 34 NY3d 938 [2019]).

Footnote 5: "[T]rial courts possess broad discretion to make evidentiary rulings precluding or admitting evidence and, absent an abuse of discretion, those rulings should not be disturbed on appeal" (People v Caden N., 189 AD3d 84, 96 [2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1050 [2021]).

Footnote 6: Defendant also failed to preserve his contention that he was denied his right to a fair trial based upon a purported conflict of interest involving the assigned counsel for Gina Julian, a codefendant who testified on his behalf at trial, and the CI (see CPL 470.05 [2]).

Footnote 7: Defendant's claims that he was denied the right to proceed pro se during jury selection, was not informed of the need to obtain civilian clothing prior to trial and that he was improperly classified as a persistent felony offender are all belied by the record.