People v Lyons (2021 NY Slip Op 06888)





People v Lyons


2021 NY Slip Op 06888


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

111709
[*1]The People of the State of New York, Respondent,
v
Seth Lyons, Appellant.

Calendar Date:October 20, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.

Mark Diamond, Albany, for appellant.
David J. Clegg, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered December 17, 2018, upon a verdict convicting defendant of the crime of murder in the second degree.
In 2017, a deceased person (hereinafter the victim) was discovered under a bridge that crossed over abandoned railroad tracks. Later that same day, defendant was seen outside at a nearby grocery store with his clothes and shoes covered in blood. Defendant originally claimed that he was assaulted but later confessed to hitting the victim, stripping him of his clothes and covering him with tree branches. In connection with this incident, defendant was charged by indictment with murder in the second degree. A suppression hearing was held, after which County Court found that defendant's statements to law enforcement were admissible. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant to a prison term of 25 years to life. Defendant appeals.
Turning first to County Court's suppression determination, "the safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation" (People v Berg, 92 NY2d 701, 704 [1999] [internal quotation marks and citation omitted]). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005] [citations omitted]). When determining whether a suspect is in police custody, various factors are considered, "such as the amount of time the person spent with the police, whether his or her freedom of action was significantly restricted, the location of the questioning and the atmosphere under which it was conducted, the person's degree of cooperation, whether he or she was apprised of his or her constitutional rights and whether the questioning was investigatory or accusatory in nature" (People v Mayerhofer, 283 AD2d 672, 673 [2001] [internal quotation marks and citation omitted]).
Defendant contends that his conversation with the police officer at the grocery store should have been suppressed. The suppression hearing testimony discloses that, when the police officer first initiated contact with defendant at the grocery store, defendant's movement was not restricted. At the suppression hearing, the officer testified that he initiated contact with defendant and noticed a large amount of blood on his clothes. The officer encouraged him to come to the police station due to defendant's claim that he was a victim of an assault and robbery. Defendant initially refused and was able to walk away from the officer. The officer confirmed that he did not impede defendant's movement. Other officers arrived, after which defendant agreed to go to the police station so long as he could first smoke a cigarette. After defendant finished smoking the cigarette, he was driven to the police station in an unmarked vehicle. The [*2]officer testified that defendant was not handcuffed at this time and he was not searched prior to entering the unmarked vehicle. Because the suppression hearing evidence demonstrates that defendant's movement was not restricted and inasmuch as the conversations or questions that the officer had with defendant were not accusatory in nature, County Court correctly found that any conversations that defendant had with the police officer at the grocery store and prior to when he went to the police station did not stem from a custodial interrogation (see People v Henry, 114 AD3d 1025, 1027 [2014], lv dismissed 22 NY3d 1199 [2014]; People v Underdue, 89 AD3d 1132, 1133 [2011], lv denied 19 NY3d 969 [2012]; People v Mayerhofer, 283 AD2d at 673-674).
Defendant also argues that his statements given at the police station prior to when Miranda warnings were administered should have been suppressed. County Court found, and the record confirms, that, at the police station, defendant was treated as a victim of an assault and that he was not subjected to a custodial interrogation. Defendant was not asked questions about the killing, was not restricted in his movements and was not handcuffed. According to the testimony of one police detective, defendant's demeanor was fine and he did not appear to be agitated. At one point during the questioning, a detective commented to defendant that he was not a suspect to any crime being investigated. Defendant was given food and cigarettes and, at various times, was taken outside the building to continue speaking with the detectives. Ultimately, a detective told defendant that he did not think he was being totally honest, to which defendant responded, "If that's what you want to think, then I'm out." Defendant, however, remained seated in the interview room and did not leave. The detective then told defendant that he would be questioning him in a different fashion and read defendant his Miranda rights. After being advised of these rights, defendant broke down and admitted to killing the victim. Because the record supports the court's determination that defendant's statements to detectives at the police station prior to the administration of Miranda warnings were not the product of a custodial interrogation, it will not be disturbed (see People v Pascuzzi, 173 AD3d 1367, 1374 [2019], lv denied 34 NY3d 953 [2019]; People v Van Amburg, 243 AD2d 845, 846 [1997], lv denied 91 NY2d 898 [1998]; People v Smith, 214 AD2d 845, 847 [1995], lv denied 86 NY2d 741 [1995]).
To the extent that defendant argues that the detectives took advantage of his mental illness, the record reveals that defendant did not appear psychologically or mentally impaired or under the influence of drugs. Furthermore, the record does not support any contention that defendant's mental incapacity impacted his waiver of his Miranda rights (see People v Garrand, 189 AD3d 1763, 1768-1769 [2020], lv denied 36 NY3d 1120 [2021]; People v Marx, 305 AD2d 726[*3], 728-729 [2003], lv denied 100 NY2d 596 [2003]; People v Pond, 217 AD2d 721, 722 [1995]). The record likewise belies defendant's argument that he made an unequivocal request for counsel (see People v Meadows, 180 AD3d 1244, 1245 [2020], lv denied 35 NY3d 994 [2020]; People v Jabaut, 111 AD3d 1140, 1142 [2013], lv denied 22 NY3d 1139 [2014]). Accordingly, County Court did not err in its suppression determination.
Relying on his extreme emotional disturbance defense, defendant argues that the verdict was against the weight of the evidence.[FN1] To prove the affirmative defense of extreme emotional disturbance, defendant was required to demonstrate by a preponderance of the evidence, "first, that he . . . acted under the influence of an extreme emotional disturbance and, second, that there was a reasonable explanation or excuse for that disturbance" (People v Roche, 98 NY2d 70, 76 [2002]; see Penal Law § 125.25 [1] [a]; People v Diaz, 15 NY3d 40, 45 [2010]). "Whether the extreme emotional disturbance defense should apply is a matter that rests in the discretion of the jury" (People v Pascarella, 172 AD3d 1533, 1534 [2019], lv denied 34 NY3d 935 [2019] [citation omitted]; see People v Reese, 166 AD3d 1057, 1060-1061 [2018], lv denied 33 NY3d 953 [2019]).
The trial evidence establishes that defendant confessed to one of the detectives that he felt disrespected by the victim and became angry at the victim. Defendant punched the victim and started hitting him with whatever he could find, including a glass bottle, a brick, rocks and a large log. Defendant also kicked the victim, removed his clothing and covered him with some old trees. Defendant's expert testified about defendant's substance abuse history, as well as his schizoaffective disorder, chronic anxiety disorder, obsessive compulsive disorder and posttraumatic stress disorder. The expert interviewed defendant, reviewed relevant evidence and concluded that defendant was suffering from an extreme emotional disturbance at the time of the incident at issue. Meanwhile, the People's expert testified that he interviewed defendant and also reviewed defendant's medical records and other relevant evidence. According to the People's expert, defendant was engaged with the victim during their altercation, was able to perceive what was going on and was able to recite the incident in detail to law enforcement officials. The People's expert opined that defendant did not lack substantial capacity to form the intent to cause the victim's death and that he was not suffering from an extreme emotional disturbance at the pertinent time.
A contrary result would not have been unreasonable had the jury credited the expert proof tendered by defendant. The jury, however, was presented with competing proof on the issue of extreme emotional disturbance and was free to credit the expert testimony offered by the People over that of defendant's expert. Deferring to the jury's resolution of the conflicting proof and [*4]viewing the evidence in a neutral light, the verdict rejecting defendant's affirmative defense of extreme emotional disturbance was not against the weight of the evidence (see People v Pascarella, 172 AD3d at 1536; People v Reese, 166 AD3d at 1062; People v Benson, 119 AD3d 1145, 1148 [2014], lv denied 24 NY3d 1118 [2015]; People v Costa, 256 AD2d 809, 809 [1998], lv denied 93 NY2d 872 [1999]).
Defendant's assertion of prosecutorial misconduct based upon certain remarks made during summation is unpreserved in the absence of a timely objection (see People v Terry, 196 AD3d 840, 846-847 [2021], lvs denied 37 NY3d 1027, 1030 [2021]; People v Planty, 155 AD3d 1130, 1133 [2017], lv denied 30 NY3d 1118 [2018]). Furthermore, the failure to object did not constitute ineffective assistance because any objection would have had little chance of success (see People v Meadows, 183 AD3d 1016, 1022-1023 [2020], lv denied 35 NY3d 1047 [2020]). In this regard, the challenged comments did not impermissibly shift the burden of proof or provide an erroneous statement of the applicable law. Defendant also faults his counsel for not stating on summation that his confession was illegally procured. This mere disagreement with trial strategy, however, does not amount to ineffective assistance (see People v Hogencamp, 295 AD2d 643, 644 [2002], lv denied 98 NY2d 697 [2002]). Viewing the record in its entirety, defendant received meaningful representation (see People v Warren, 160 AD3d 1132, 1137 [2018], lv denied 31 NY3d 1154 [2018]).
Regarding the sentence, although County Court imposed the maximum permissible term, the record fails to disclose any abuse of discretion or extraordinary circumstances that warrant a reduction of the sentence in the interest of justice (see People v Lee, 183 AD3d 1183, 1191 [2020], lv denied 35 NY3d 1114 [2020]; People v Jones, 139 AD3d 1189, 1191 [2016], lv denied 28 NY3d 932 [2016]). Nor does the record support defendant's claim of vindictiveness by the court (see People v Lind, 133 AD3d 914, 917-918 [2015], lv denied 27 NY3d 1153 [2016]). To the extent that defendant contends that the imposed sentence violated his constitutional rights, such contention is unpreserved (see People v McMillan, 185 AD3d 1208, 1213 [2020], lvs denied 35 NY3d 1112, 1114 [2020]).
Egan Jr., J.P., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's legal sufficiency argument is unpreserved because he failed to renew his trial motion to dismiss after the People presented rebuttal evidence (see People v Odofin, 153 AD3d 972, 974 [2017]).